655 F.Supp. 1216 (1987)
HOPE BAPTIST CHURCH OF CASTLE POINT, Plaintiff,
v.
CITY OF BELLEFONTAINE NEIGHBORS, et al., Defendants.
No. 86-841C(1).
United States District Court, E.D. Missouri.
March 16, 1987.
*1217 Shulamith Simon, St. Louis, Mo., for plaintiff.
Ben Ely, Jr., Linda Hahn, Donald J. Stohr, James W. Erwin, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, Chief Judge.
This case is now before the Court on the motion of the municipal and individual defendants to dismiss plaintiff's complaint. The plaintiff Hope Baptist Church of Castle Point, a not-for-profit Missouri corporation, seeks damages, declaratory judgment, and injunctive relief for claims arising out of the denial of a rezoning application and special use permit. The defendants are the City of Bellefontaine Neighbors (the City) and the City's Mayor and Board of Aldermen. For the reasons set out below, the defendants' motions to dismiss are granted.
As the plaintiff alleges, the plaintiff owns an 18 acre tract of land located within the limits of the City. Currently, the property is zoned for single family residences. The property is located on the east side of Bellefontaine Road, a county arterial highway carrying heavy traffic. The property is bounded on the north by a service station and restaurant, on the west by the St. Louis State School and Hospital, which lies to the west of Bellefontaine Road, on the south by the land on which the plaintiff's church sits, and on the east by single family dwellings. South of the tract on which the church is located are additional single family dwellings.
During the summer of 1985, the plaintiff applied for rezoning of its property from R-1 single family to C-2 commercial classification and for a special use permit for multiple-dwelling condominium units. The plaintiff proposed to use the property for a supermarket and multiple-family condominiums containing 52 units.
On September 3, September 26, and October of 1985, the City's Planning and Zoning Commission considered the plaintiff's application. At the meeting on October 1, the Commission recommended denial of the application by a vote of four to one. Thereafter, the City's Board of Aldermen held a public hearing on the plaintiff's application. On November 21, 1985, the Board voted unanimously to deny the plaintiff's request for rezoning.
The plaintiff alleges that the heavy traffic and adjoining property render its tract unusable as single family residential property; that single family residential zoning bears no substantial relationship to the public health, safety, morals, and general welfare of City residents; that the acts were unreasonable, arbitrary, and capricious; and that the refusal to rezone was based primarily on a desire to benefit a few adjacent property owners without consideration of the benefits of the rezoning for the public as a whole and without consideration of the impact on the plaintiff of the unsuitability of its property for single family residences. Moreover, the plaintiff alleges that the defendants denied the application willfully and in conscious disregard of the plaintiff's constitutional rights. Specifically, *1218 the plaintiff alleges that it was deprived of its rights under the Fourteenth Amendment to the United States Constitution and Article I, § 10 of the Missouri Constitution. In Count I, plaintiff seeks $350,000.00 in actual damages against the City and $1,000,000.00 in punitive damages against the individual defendants. In Count II, plaintiff seeks a declaration that the only reasonable zoning classification for its property is commercial. The plaintiff seeks also to enjoin the defendants from enforcing the current zoning classification.
In passing on a motion to dismiss, a court is required to view the facts alleged in the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss will not be granted merely because the complaint does not state every element necessary for recovery with precision. 5 Wright & Miller, Federal Practice and Procedure § 1216 at 120 (1969). A complaint is sufficient if it "contain[s] allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." Id. at 122-23. A complaint should not be dismissed unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46, 78 S.Ct. at 102.
The defendants present three arguments in support of their motion to dismiss. First, the defendants argue that the plaintiff's allegations fail to state a claim under § 1983. Second, the individual defendants argue that they are immune from liability because they acted in a legislative capacity. Third, the Mayor argues that the complaint does not contain sufficient factual allegations to hold him liable.
To establish liability under § 1983, a plaintiff may show he was deprived of a constitutional right under color of law. The parties do not dispute that the defendants acted under color of state law. The primary question for consideration is whether the plaintiff has alleged a violation of a right, namely the right to due process of law.
The Due Process Clause protects individuals from deprivation of life, liberty, or property without due process of law. The clause comprises both procedural and substantive protection. The plaintiff does not allege any procedural defect in the zoning proceedings. Rather, the plaintiff relies exclusively upon the substantive component of the Due Process Clause.
Substantive due process bars "certain government actions regardless of the fairness of the procedures used to implement them...." Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). The reach of substantive due process is necessarily uncertain. "Because `[d]ue process of law, as a historic and generative principle, precludes defining,' there are not precise standards for determining what governmental actions are proscribed by substantive due process." Fitzgerald v. Williamson, 787 F.2d 403 (8th Cir.1986) (quoting Rochin v. California, 342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952)).
Regarding real property, substantive due process guarantees the rights of a property owner to be free from arbitrary or irrational zoning actions. Arlington Heights v. Metropolitan Housing Corporation, 429 U.S. 252, 263, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977); Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926); Burns v. City of Des Peres, 534 F.2d 103, 108 (8th Cir.1976), cert. denied, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976); In re Malone, 592 F.Supp. 1135, 1157-58 (E.D.Mo. 1984), aff'd, 794 F.2d 680 (8th Cir.1986). In Euclid, the Supreme Court required that before a zoning can be declared unconstitutional it must be clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare. Euclid, 272 U.S. at 395, 47 S.Ct. at 121. The application of this standard has been left primarily to the district and circuit courts.
The law of this circuit is unsettled. In Littlefield v. City of Afton, 785 F.2d 596, *1219 607 (8th Cir.1986), the Eighth Circuit held that the plaintiffs stated a claim by alleging an arbitrary and capricious denial of a building permit. However, as the Court subsequently announced in Lemke v. Cass County, Nebraska, slip op. at 3 (8th Cir. Feb. 4, 1987) [815 F.2d 711 (Table)] (per curiam; en banc), "[w]hether a substantive due process claim may arise from a denial of a zoning permit is an open question in this circuit and need not be decided in this case." Judge Arnold, concurring with four other members of the panel, commented, "I take comfort in the knowledge that the Court's statement that the question is open necessarily deprives Littlefield of any precedential effect....The next panel before which this question is argued will have a clean slate on which to write." Id. at 9 (Arnold, J., concurring).
This Court begins from the proposition that federal courts should be circumspect in the application of substantive due process, particularly in the context of zoning decisions. See id. at 4 (Arnold, J., concurring). At the municipal level of government, zoning decisions are made daily and frequently. To allow the loser of each zoning decision, both those who seek a zoning change and those who seek to block changes, to sue in federal court on bald allegations of arbitrariness would significantly burden both federal courts and local zoning decisionmakers.
Additional concerns argue against the extention of substantive due process in this type of case. The application of substantive due process to local zoning decisions implicates notions of federalism and separation powers. The standard of arbitrariness, in the main, left zoning decisions to local legislative bodies. The standard should not be viewed by federal courts as an invitation to conform zoning decisions to the judges' notions of land use. In Euclid, the Supreme Court sought to accommodate the rights of property owners with the police power of the states. Euclid, 272 U.S. at 387-88, 47 S.Ct. at 118. The "generous" standard of arbitrariness gives wide berth to the states to legislate and circumscribes the role of federal courts in zoning decisions.
Zoning decisions require judgments concerning competing uses of land. The standard of arbitrariness allows the political process to sort out competing land use considerations. "In fact, it is because legislators and administrators are properly concerned with balancing numerous competing considerations that courts refrain from reviewing the merits of their decisions, absent a showing of arbitrariness or irrationality." Arlington Heights, 429 U.S. at 265, 97 S.Ct. at 563. The standard does not ensure any particular zoning scheme or sanction a given approach to land use; the standard does ensure rational decisionmaking. That is, a decision must be supported by a reason. While the reasons must be constitutionally permissible and must not serve as a pretext for actions illegal under federal law, the Court will not otherwise review the merits of the rationale. Moreover, in the adjudication of ordinary zoning disputes, the federal courts have no comparative advantage over state courts. In fact, state courts by experience and tradition are better suited to handle zoning matters.
As Judge Arnold observed, a claim of arbitrariness "is easily made in every zoning case, and is the stuff of which state administrative law is made. The state courts are open to hear, and do hear, such claims routinely. I see no reason to read the Due Process Clause as a constitutionalized Administrative Procedure Act setting up the federal courts as a forum for the review of every run-of-the-mill land-use dispute." Id. at 6 (Arnold, J., concurring). Judge Arnold's comments are clearly applicable here.
The approach taken by the First Circuit in Creative Environments, Inc. v. Estabrook, 680 F.2d 822 (1st Cir.1982), cert. denied, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982), embraces well the above principles. In Creative Environments, the First Circuit held that in conventional zoning disputes allegations of arbitrariness, even when based upon violations of state law, do not rise to a substantial due process claim. There, a prospective developer sought to rezone property *1220 for a subdivision development. As the developer alleged, the planning board denied its plan because town officials feared the social and political effects of the plan upon the community. The developer found particularly arbitrary the town's insistence upon an entirely new plan at a late stage of the proceedings. The language of the court's opinion denying the developer's claim bears repetition:
Such a claim is too typical of the run of the mill dispute between a developer and a town planning agency, regardless of [the developer's] characterizations of it and of defendants' alleged mental states, to rise to the level of a due process violation. The authority cited by [the developer], as well as other cases, all suggest that the conventional planning dispute  at least when not tainted with fundamental procedural irregularity, racial animus, or the like  which takes place within the framework of an admittedly valid state subdivision scheme is a matter primarily of concern to the state and does not implicate the Constitution. This would be true even were planning officials to clearly violate, much less "distort" the state scheme under which they operate. A federal court, after all, "should not ... sit as a zoning board of appeals." Village of Belle Terre v. Boraas, 416 U.S. 1, 12, 94 S.Ct. 1536, 1542, 39 L.Ed.2d 797 (1974) (Marshall, J., dissenting). Every appeal by a disappointed developer from an adverse ruling by a local Massachusetts planning board necessarily involves some claim that the board exceeded, abused, or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question under section 1983. As has been often stated, "[t]he violation of a state statute does not automatically give rise to a violation of rights secured by the Constitution." Crocker v. Hakes, 616 F.2d 237, 239 n. 2 (5th Cir.1980) (per curiam).
Creative Environments, 680 F.2d at 833 (footnote omitted). Subsequent decisions in the First Circuit have followed Creative Environments. E.g., Raskiewicz v. Town of New Boston, 754 F.2d 38, 44 (1st Cir. 1985), cert. denied, ___ U.S. ___, 106 S.Ct. 135, 88 L.Ed.2d 111 (1985); Cloutier v. Town of Epping, 714 F.2d 1184, 1189 (1st Cir.1983); Chiplin Enterprises, Inc. v. City of Lebanon, 712 F.2d 1524, 1527 (1st Cir.1983); Sucesion Suarez v. Gelabert, 701 F.2d 231, 233 (1st Cir.1983); see generally D. Mandelker, J. Gerard & E. Sullivan, Federal Land Use Law § 4.03[3][a] (1986).
Under Creative Environments, allegations of arbitrariness alone do not state a claim; the plaintiff must allege something more. In the instant case, the plaintiff alleges that the decision of the Bellefontaine Neighbors' Board of Aldermen was unreasonable, arbitrary, capricious, and without substantial relation to health, safety, and welfare of the community. In particular, the plaintiff alleges that the Board desired to benefit a few adjacent property owners without considering the benefits of rezoning for the public as a whole.
Nothing in these allegations smacks of unfairness rising to a constitutional deprivation. The plaintiff's application was considered by the Zoning Commission, which recommended its denial. The application was then taken up by the Board, which conducted a public hearing before denying the application. The allegations of the complaint provide the Board's rationale: a desire to protect the interests of nearby single-family-residence property owners. Given that the plaintiff's tract is bounded on two sides by single-family residences and on the third side by a church, the Board's justification lies within the realm of the rational. Moreover, the plaintiff does not allege that the desire to protect the interests of the adjoining property owners served as a pretext for any illegal acts. Accordingly, the plaintiff's complaint is dismissed for failure to state a claim.[1]
*1221 Alternatively, assuming the plaintiff states a claim, the individual defendants must be dismissed. When acting in their legislative capacity, local officials responsible for zoning decisions are absolutely immune from damage liability for passage of zoning legislation. Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607, 613-14 (8th Cir.1980). If the alleged acts were within the scope of the immunity, then absolute immunity defeats a damages suit at the pleadings stage. Id. at 611 (citing Imbler v. Pachtman, 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 989 n. 13, 47 L.Ed.2d 128 (1976)).
The instant allegations challenge the action of the Board in denying the plaintiff's application to rezone. In undertaking these acts, the Board members exercised their judgment to fulfill the elected responsibilities. Thus, they acted in their legislative capacity, are entitled to absolute immunity, and are accordingly dismissed.
Finally, regarding the Mayor, the complaint alleges only that "Defendant Joseph Berger is an individual and is, and has been, Mayor of the City at all times material herein." The complaint does not allege that the Mayor performed any acts regarding the plaintiff's application.[2] Therefore, the complaint fails to state a claim against the Mayor.
NOTES
[1] Having dismissed the federal basis for the plaintiff's claim, the Court declines to exercise pendent jurisdiction over the plaintiff's claim to the extent it is based upon the Missouri Constitution.
[2] As the plaintiff notes, Berger is the Mayor of a fourth class city. Therefore, under Mo.Rev.Stat. § 79.120 (Vernon's 1987), he votes in Board elections only in the case of a tie. On this basis, the plaintiff argues that the Mayor is not entitled to legislative immunity. The Court need not reach this issue because the plaintiff fails to state claim against the Mayor.